MARY ANNE MARTIN, SBN: 7-5277
GAVRILOV & BROOKS
2315 Capitol Avenue
Sacramento, CA 95816
Phone: (916) 504-0529
Facsimile: (916) 727-6877
Email: mmartin@gavrilovlaw.com

Attorneys for Plaintiff
CENTRAL VALLEY COMPUTER PARTS, INC.

# UNITED STATES DISTRICT COURT

## DISTRICT OF WYOMING

| | |
|---|---|
| CENTRAL VALLEY COMPUTER PARTS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>RESOURCE EXCHANGE MARKETING, LLC, a Wyoming limited liability company; and ANDREW SOLOMON, an individual<br><br>Defendants. | Case No. 0:21-cv-00216<br><br>**COMPLAINT FOR:**<br><br>**1. BREACH OF CONTRACT;**<br><br>**2. FRAUD;**<br><br>**3. WIRE FRAUD;**<br><br>**4. VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT;**<br><br>**5. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; CONVERSION; and**<br><br>**6. UNJUST ENRICHMENT.**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff CENTRAL VALLEY COMPUTER PARTS, INC. hereby alleges the following:

**PARTIES**

1.   Plaintiff CENTRAL VALLEY COMPUTER PARTS, INC. ("CVCP" or "Plaintiff") is a corporation in good standing, duly formed and operating under the laws of the

State of California, with its principal place of business in Ripon, California. CVCP is an online retail and wholesale computer parts dealer.

2.  Defendant RESOURCE EXCHANGE MARKETING, LLC ("REM" or "Defendant") is a limited liability company operating under the laws of the State of Wyoming and with its place of incorporation in the State of Wyoming, with a registered agent in Cheyenne, Wyoming. On information and belief, REM's principal place of business is in the State of Georgia.

3.  Defendant ANDREW SOLOMON ("SOLOMON" or "Defendant") is a natural person. Upon information and belief, SOLOMON is an owner, officer, director and/or employee of REM and is domiciled in Atlanta, Georgia.

4.  Plaintiff is informed and believes, and thereon alleges, that each Defendant was the co-conspirator, partner, associate, joint venturer, predecessor-in-interest, successor-in-interest, co-owner, agent, employer and/or employee of his or her or its co-Defendant(s), and with regard to the conduct alleged hereinbelow, aided and abetted, facilitated, authorized, permitted, participated in, and conspired to engage in such conduct and to cause the damages suffered by the Plaintiff.

**JURISDICTION AND VENUE**

5.  Jurisdiction is based on diversity of citizenship and federal question. The amount in controversy exceeds $394,000. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964 because this action arises, in part, under the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). The amount in controversy in this action satisfies the jurisdictional requirement of this Court. This Court has supplemental subject-matter jurisdiction over the remaining additional state and common law claims in this action pursuant to 28 U.S.C. § 1367 and § 1338(b) because these additional claims arise out of, and are so related to, the same case or controversy as the main federal question claims for civil RICO violations and/or because those claims are joined with substantial and related claims under federal law.

//

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965. Defendant Resource Exchange Marketing LLC is a Wyoming limited liability company that does business in the District of Wyoming with a registered agent in Cheyenne, Wyoming.

**FACTUAL ALLEGATIONS**

7. REM buys and sells new and used computers and computer components, primarily to businesses through www.ebay.com and other Internet platforms. SOLOMON serves as REM's manager and primary point of contact with the public. Between 2015 and 2019, CVCP made multiple purchases from REM through SOLOMON, all of which were timely delivered to CVCP, and also made sales to REM through SOLOMON.

8. On or about December 5, 2019, SOLOMON contacted CVCP on the WhatsApp mobile application that allows users to share voice, text, photo and other communications. SOLOMON sent a spreadsheet offering a variety of Macbook computer and iPad model numbers available for purchase from REM. *See* spreadsheet of specifications attached hereto as Exhibit 1. *See also* written WhatsApp communications between SOLOMON and CVCP manager Jared Van Nieuwenhuyzen attached hereto as Exhibit 2 at p. 1.

9. On or about December 6, 2019, CVCP submitted a written purchase order to SOLOMON via email whereby CVCP agreed to purchase one thousand seventy five (1,075) new Apple Macintosh laptops and iPads from REM. Attached hereto as Exhibit 3 is a copy of the purchase order dated December 6, 2019, which is incorporated fully herein, evidencing the material terms of the contract between REM and CVCP, including equipment descriptions, quantities, unit prices, delivery address, contact information for each party, and dollar amounts. Attached hereto as Exhibit 4 is a copy of the email dated December 6, 2019 from CVCP to SOLOMON which attached the purchase order. CVCP's order consisted of 300 new 12.9" Apple iPad Pros, 125 new 13" Apple Macbook Airs, 225 new Apple Macbook Pros, and 425 new Apple Macbook Pros with 16" retina screens (collectively, the "New Apple Products"). Ex. 3 at p. 1.

//

10. On or about December 9, 2019, pursuant to the agreement and purchase order, CVCP paid $412,500.00 to REM by way of wire transfer payment from its Wells Fargo Platinum Checking Account. Attached hereto as Exhibit 5 is CVCP's December 2019 bank statement evidencing the $412,500 wire transfer on 12/9 that identifies "Resource Exchange Marketing LLC" as the beneficiary for transaction #191209177481. Ex. 5 at p. 3. This payment represented half of the $825,000 total purchase price for the New Apple Products, with payment of the remaining $412,500 due to REM upon delivery. Attached hereto as Exhibit 6 is the REM wire transfer instructions that were provided to CVCP by SOLOMON on or about December 6, 2019. Ex. 2 at 1.

11. On or about December 19, 2019, CVCP received one of each of the four models of New Apple Products it had ordered from REM: a new Apple iPad Pro 12.9"; a new Apple Macbook Air 13"; a new Apple Macbook Pro; and a new Apple Macbook Pro 16" retina display (hereinafter the "Initial Delivery"). The Initial Delivery was comprised of just four units of the 1,075 New Apple Products purchased from REM, representing a sum value of only $2,715 for the four units.

12. Upon receipt of the Initial Delivery, CVCP manager Jared Van Nieuwenhuyzen contacted REM owner and manager SOLOMON on hundreds of occasions to inquire about the status of CVCP's remaining 1,071 New Apple Products which had not yet been delivered by REM. Throughout these correspondence, CVCP informed SOLOMON that CVCP required prompt delivery of the New Apple Products for re-sale to its customers. SOLOMON, on behalf of REM, assured CVCP that the remaining 1,071 units of undelivered New Apple Products would arrive shortly.

13. Well over one week later, on or about December 28, 2019, SOLOMON informed CVCP manager Jared Van Nieuwenhuyzen verbally and via WhatsApp that the remaining 1,071 units of undelivered New Apple Products were on a truck in transit to CVCP. Ex. 2 at p. 6.

14. No such delivery ever arrived. SOLOMON made repeated false assurances to CVCP that delivery of the remaining undelivered New Apple Products was imminent. Further, after the continued and repeated failure to deliver the New Apple Products, SOLOMON made

repeated false assurances to CVCP that REM was in the process of issuing a refund to CVCP. *Id*. at pp. 6-7, 11, 13-15, 18-20, 24.

15. On or about March 16, 2020 - over four months after the New Apple Products were to be delivered - REM refunded $10,000.00 to CVCP for a portion of the undelivered New Apple Products. This partial refund represented a measly 2% of the payment CVCP provided to REM in December 2019.

16. After another several months passed, on or about July 15, 2020, REM refunded an additional $5,000.00 to CVCP for another portion of the undelivered New Apple Products. This partial payment was so small that it barely covered one month of interest on the money REM had already withheld and refused to return for over half a year.

17. Since the meager partial refund issued by REM on July 15, 2020, REM has not made any further re-payment of the funds CVCP paid in December 2019. As of the date of filing this complaint, CVCP has not received any of the New Apple Products as promised by REM, aside from the four units contained in the Initial Delivery. REM must refund the remaining $394,785 that it owes to CVCP, plus interest that has accrued, and continues to accrue, since December 2019.

18. CVCP has made hundreds of attempts to either obtain a refund from REM through SOLOMON, and/or delivery of the remaining 1,071 units of New Apple Products purchased by CVCP. *See* Ex. 2. On or about November 5, 2020 CVCP manager Jared Van Nieuwenhuyzen emailed SOLOMON to follow-up on the refund(s) that REM had promised to CVCP, and even offered to allow REM to set up a payment plan for the refund. *See* Ex. 4 at p. 1. Neither REM nor SOLOMON have refunded the balance owed to CVCP. Based upon REM's conduct, or lack thereof, it is clear REM never intended to provide the products ordered and paid for by CVCP, and REM and SOLOMON intentionally made misrepresentations to CVCP in order to induce CVCP to provide funds to Defendants that Defendants intended to keep for themselves.

19. CVCP has been significantly harmed as a consequence of REM and SOLOMON's failure to timely deliver the New Apple Products. CVCP has been unable to fill

customer orders for those products and its business has been negatively impacted. CVCP has suffered financial losses due to lost profits, reduced cash flow, declining inventory and delays to CVCP customers caused by REM's failure to timely deliver the New Apple Products.

**FIRST CAUSE OF ACTION
BREACH OF CONTRACT
(Against all Defendants)**

20. Plaintiff re-alleges and reincorporates each and every allegation contained in the Factual Allegations and all previous paragraphs, inclusive, as though fully set forth herein.

21. Defendants made an offer to Plaintiff to sell the New Apple Products when SOLOMON marketed the equipment for sale in a spreadsheet delivered via WhatsApp message on or about December 5, 2019. *See* Ex. 1 at p. 1, Ex. 2 at p. 1. Defendants induced Plaintiff to purchase the New Apple Products by promising that the delivery "will take a week to get to you." Ex. 2 at p. 1.

22. Plaintiff accepted Defendants' offer to sell 1,075 units of the New Apple Products for a total of $825,000 when it submitted a written purchase order to Defendants on December 6, 2019. *See* Ex. 3 at p. 1; Ex. 4 at p. 1.

23. Plaintiff did all, or substantially all, of the significant things that the contract required it to do, or was excused from having to further perform. Pursuant to the contract, on or about December 9, 2019, CVCP paid $412,500.00 to REM by wire transfer in exchange for delivery of the New Apple Products, with the remaining $412,500 due to REM upon delivery. *See* Ex. 5 at p. 3.

24. All conditions required by the contract for Defendants' performance were performed and, pursuant to the contract, Defendants were required to deliver the 1,075 units of the New Apple Products to Plaintiff in December 2019.

25. Defendants failed to perform as required pursuant to the contract. Only four units of the New Apple Products were received by Plaintiff in the Initial Delivery from Defendants on or about December 19, 2019. Thereafter, Defendants breached the agreement by failing to deliver the remaining 1,071 units of New Apple Products purchased by Plaintiff. Defendants mitigated a

miniscule amount of the damages it caused to Plaintiff by refunding $10,000 on or about March 16, 2020, and another $5,000 on or about July 15 of 2020.  In total, Defendants have refunded approximately 3% of the amount Plaintiff has paid, accounting for interest accrued in the two years since Defendants failed to deliver the products ordered by Plaintiff.

26.     As a proximate cause of Defendants' breach of contract, Plaintiff has sustained damages, including (but not limited to) direct loss in the amount of $394,785.00, plus interest thereon, consequential damages from lost profits and customer service disruptions, as well as other damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
## FRAUD
## (Against all Defendants)

27.     Plaintiff re-alleges and reincorporates each and every allegation contained in the Factual Allegations and all previous paragraphs of all previous Causes of Action in this Complaint, inclusive, as though fully set forth herein.

28.     SOLOMON knowingly and intentionally made numerous material misrepresentations and omissions of fact on behalf of REM in his communications with Plaintiff. For example, Defendants misrepresented to Plaintiff that it would only take one week for the New Apple Products to arrive and that Defendants would promptly ship the New Apple Products upon receipt of payment from Plaintiff. Ex. 2 at p. 1. Defendants misrepresented to CVCP manager Jared Van Nieuwenhuyzen on or about December 28, 2019 that Defendants had already shipped the New Apple Products and they were in transit via truck to Plaintiff, when in fact no such shipment(s) had been made. *Id*. at p. 8. Defendants thereafter misrepresented numerous times that Defendants would promptly provide a full refund to Plaintiff. *Id* at 38-39.

29.     Defendants' statements and representations were false, and Defendants, and each of them, knew that the statements and representations were false when they made such representations, or they made the representations recklessly and without regard for their truth. Defendants intended that Plaintiff rely upon the representations, and Plaintiff reasonably and detrimentally relied upon each of those, resulting in the damages alleged herein.

30. As a proximate result of the wrongful acts herein alleged, Defendants caused general and special damages to Plaintiff as described above.

31. In doing the things herein alleged, SOLOMON and REM acted with malice, oppression, and/or the intent to defraud, e.g., willfully and with the intent to cause injury to CVCP, and/or in conscious disregard of CVCP's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish SOLOMON and REM and deter others from engaging in similar misconduct. Without the imposition of punitive damages, SOLOMON and REM retain every incentive to continue their predatory conduct with impunity.

### THIRD CAUSE OF ACTION
### WIRE FRAUD
### (Against all Defendants)

32. Plaintiff re-alleges and reincorporates each and every allegation contained in the Factual Allegations and all previous paragraphs of all previous Causes of Action in this Complaint, inclusive, as though fully set forth herein.

33. Defendants knowingly participated in and devised a fraudulent scheme to wrongfully obtain money from Plaintiff by making false and fraudulent statements and representations to Plaintiff regarding delivery of the New Apple Products through the Internet on web-based applications, such as WhatsApp and email. *See* Ex. 2; *See also* Ex. 4.

34. The fraudulent statements and representations that Defendants intentionally made were material, as they induced Plaintiff to order and pay for the New Apple Products, as well as to continue waiting for delayed delivery of the New Apple Products long after they were expected to be received.

35. Defendants acted with the intent to defraud and deceive Plaintiff by advertising equipment, product, and/or goods for sale that Defendants did not possess, then failing to disclose to Plaintiff that Defendants could not timely deliver said equipment, product, and/or goods and falsely assuring Plaintiff that the New Apple Products were already in transit to Plaintiff.

36. Defendants used an interstate wire communication to carry out an essential part of

their scheme by using the Internet and the web-based application, WhatsApp, to advertise their computer equipment, products, and/or goods for sale on or about December 5, 2019. *See* Ex. 1.

37. Defendants used an interstate wire communication to receive a $412,500 payment from Plaintiff's Wells Fargo Platinum Checking account in Ripon, California on or about December 9, 2019. *See* Ex. 5 at p. 3. *See also* Ex. 6 at p. 1 and Ex. 2 at p. 1.

38. Defendants utilized the Internet and web-based application WhatsApp to further the fraudulent scheme, including falsely assuring Plaintiff on or about December 28, 2019 that delivery of the New Apple Products was imminent. Ex. 2 at p. 6. Defendants further utilized interstate telephone lines to verbally assure CVCP management that Defendants would deliver the goods and/or establish a payment plan to refund the entire $394,785.00 that Defendants owed for the undelivered New Apple Products. *See* Ex. 2 at p. 1, 7, 14.

39. Due to Defendants' fraudulent statements and representations, Plaintiff's reputation and business have been harmed in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**
**(Against all Defendants)**

40. Plaintiff re-alleges and reincorporates each and every allegation contained in the Factual Allegations and all previous paragraphs of all previous Causes of Action in this Complaint, inclusive, as though fully set forth herein.

41. Defendants, and each of them, constitute an enterprise as a limited liability company, corporation, association, union or group of individuals associated in fact.

42. Defendants, and each of them, directed and controlled their actions to defraud Plaintiff by means of utilizing interstate communication channels of the Internet, including communications with Plaintiff via WhatsApp and bank wire transfer(s).

43. Defendants, and each of them, employed a pattern of racketeering activity to defraud the Plaintiff by means of advertising computer equipment for sale through the Internet, including the web-based application WhatsApp.

44. Defendants, and each of them, with the use of interstate wires fabricated the New

Apple Products' delivery status to Plaintiff and further fabricated the status of Plaintiff's refund.

45. Defendants, and each of them, conspired or endeavored to violate the civil RICO Act by using interstate wires for the benefit of their enterprise and to obtain money from Plaintiff, and used a pattern of such activity in attempt to obtain such money.

46. Defendants' racketeering activity has caused harm to Plaintiff, including loss of business and lost profits.

47. Due to Defendants' fraudulent statements and representations, Plaintiff has been harmed in an amount according to proof at trial.

### FIFTH CAUSE OF ACTION
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
**(Against all Defendants)**

48. Plaintiff re-alleges and reincorporates each and every allegation contained in the Factual Allegations and all previous paragraphs of all previous Causes of Action in this Complaint, inclusive, as though fully set forth herein.

49. Every commercial contract contains an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.

50. Plaintiff and Defendants entered into a contract as stated above.

51. Plaintiff did all, or substantially all, of the things that the contract required it to do, and/or was excused from further performance. Pursuant to the contract, Plaintiff paid Defendants $412,500.00 on December 9, 2019. The remainder of the payment was not due and owing until final delivery of the New Apple Products by Defendants, which never occurred and which Plaintiff was excused from performing. Plaintiff was willing and able to perform the remainder of its obligation under the contract if Defendants had performed as required.

52. All the conditions required by the contract for Defendants' performance occurred, yet Defendants failed to perform as required and frustrated the very purpose of the contract.

53. Defendants did not act fairly and in good faith by failing to deliver all of the New Apple Products; failing to refund the amounts paid by Plaintiff; lying to Plaintiff about the

product being in transit and/or on a delivery truck; and lying to Plaintiff by promising to establish a payment play to refund Plaintiff.

54. Defendants' actions have unfairly interfered with Plaintiff's right to receive the benefits of the contract by depriving Plaintiff of the New Apple Products.

55. As a proximate result of Defendants' breaches of the covenant of good faith and fair dealing, Plaintiff has sustained damages including, but not limited to, use of the funds paid to Defendants, which have not been refunded, loss of reputation, client relationship, and lost profits, and costs/fees incurred in attempting to collect said sums, all in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
## CONVERSION
### (Against all Defendants)

56. Plaintiff re-alleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as though fully set forth herein and with the same force and effect.

57. As set forth above, Plaintiff paid $412,500 of consideration to Defendants for the New Apple Products, but has only received an infinitesimal portion of the New Apple Products delivery (i.e. less than 0.01% of the New Apple Products were delivered) and a negligible refund of $15,000 (i.e. less than 3% of the amount paid has been refunded in the past two years, accounting for interest accrued).

58. Plaintiff has made hundreds of requests to Defendants for either a full refund or delivery of the remaining 1,074 units of New Apple Products purchased by Plaintiff. However, despite Defendants making promises to refund the money in full, Defendants have not done so and have made no meaningful attempt to return the payment to Plaintiff.

59. By failing to refund CVCP's money, Defendants have intentionally and substantially interfered with CVCP's right to possess and enjoy the money that it paid to Defendants.

60. CVCP has not consented to Defendants' retention of the outstanding amount owed to CVCP by Defendants.

61. As a direct and proximate result of such conversion, Plaintiff has been damaged and has been prevented from having its payment fully refunded and prevented from access to its products purchased from Defendants.

62. SOLOMON's conduct in misrepresenting to Plaintiff that Defendants would promptly refund the entire amount Plaintiff paid and/or timely deliver the New Apple Products to Plaintiff, and then failing to do so despite requests from Plaintiff, SOLOMON has acted in a way that is so vile, base, and contemptible that his conduct rises to the level of despicable conduct. Such conduct by SOLOMON on behalf of REM was committed with oppression, fraud, and/or malice, so as to justify an award of exemplary and punitive damages, in addition to actual damages.

63. Further, Defendants' conduct alleged hereinabove included deceit and/or fraudulent concealment of material facts known to Defendants with the intent of depriving Plaintiff of its legal rights and causing financial injury, and Defendants conduct was despicable, malicious, and oppressive, so as to justify an award of exemplary and punitive damages in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Against all Defendants)**

64. Plaintiff re-alleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as though fully set forth herein and with the same force and effect.

65. Defendants' financial windfall resulting from fraud, unauthorized and illegal conversion of Plaintiff's property and money was unauthorized, unjust and unlawful for all of the reasons stated above.

66. As a result of Defendants' wrongful conduct as described herein, Defendants, and anyone to whom they have transferred any money, property or assets derived from their fraud, and unrefunded money from Plaintiff, have been unjustly enriched at the expense of Plaintiff, and have unjustly retained the benefits of their wrongful conduct.

67. Therefore, the court should determine and issue its order that Defendants will be unjustly enriched should they be permitted to retain any of the money derived from Defendants' unlawful and unjust conduct.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays judgment against Defendants, and each of them, as follows:

1. For the sum of $394,785.00, or in an amount according to proof;
2. For interest on the $394,785.00 sums owed to Plaintiff by Defendants ;
3. For special damages and general damages according to proof;
4. For consequential damages according to proof;
5. For an order declaring that Defendants have been unjustly enriched by their conduct herein;
6. For punitive and/or exemplary damages;
7. For costs of suit incurred; and
8. For any further relief and/or further order(s) as the Court may deem proper.

Dated: November 23, 2021                                  **GAVRILOV & BROOKS**

                                                          By:   */s/ Mary Anne Martin*
                                                                Mary Anne Martin
                                                                Attorney for Plaintiff
                                                                CENTRAL VALLEY COMPUTER
                                                                PARTS, INC.

**EXHIBIT INDEX**

| | |
|---|---|
| 1 | Spreadsheet of specifications with model numbers offering Macintosh equipment for sale from SOLOMON/REM to CVCM |
| 2 | Whatsapp communications between SOLOMON and CVCM manager Jared Van Nieuwenhuyzen dated December 5, 2019 through November 9, 2021 |
| 3 | Purchase Order sent from CVCP to REM dated December 6, 2019 for $825,000 of New Apple Products |
| 4 | Email correspondence dated 12/06/2019, 12/07/2019 and 11/05/2020 between Jared Van Nieuwenhuyzen of CVCM and SOLOMON re "Apple PO" |
| 5 | CVCP Platinum Business Checking bank statement from Wells Fargo dated December 31, 2019 [*Redacted*] |
| 6 | Resource Exchange Management LLC instructions for bank wire transfer [*Redacted*] |

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816