IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| CENTRAL VALLEY COMPUTER PARTS, INC., | |
| Plaintiff, | |
| vs. | Case No.  2:21-CV-216-SWS |
| RESOURCE EXCHANGE MARKETING, LLC and ANDREW SOLOMON, | |
| Defendants. | |

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

Having missed their deadline to file a motion to dismiss, Defendants filed a motion

for summary judgment arguing lack of personal jurisdiction and lack of subject matter

jurisdiction. Although this motion was filed early in the proceedings and discovery just

recently commenced, the Court is authorized to grant summary judgment at this time.

Despite asserting that the motion was premature Plaintiff did not submit the required Rule

56(d) affidavit explaining how additional time would benefit Plaintiff's case. There is

insufficient evidence to show the required pattern necessary to sustain a RICO Act claim

so summary judgment is appropriate on this issue. The Court has diversity jurisdiction over

the remaining claims and personal jurisdiction over both Defendants, thus summary

judgment on the remaining claims is inappropriate.

## FACTUAL BACKGROUND

Plaintiff Central Valley Computer Parts ("CVCP") is a California corporation operating as an online retailer for wholesale computer parts. (ECF No. 1 at 2.) Defendant Resource Exchange Marketing ("REM") is a limited liability company ("LLC") incorporated in Wyoming with its principal place of business in Georgia. (ECF No. 33 at 4.) Defendant Andrew Solomon is the sole owner and member of REM. (*Id.*) REM buys and sells computer parts through online retailers. (ECF No. 1 at 3.) Between 2015 and 2019, CVCP and REM had a working business relationship where CVCP would regularly purchase computer parts from REM. (*Id.*)

In December 2019, Solomon through REM contacted CVCP manager Jared Van Nieuwenhuyzen with a spreadsheet offering several types of Apple products for sale. (*Id.*) These communications, which are attached to Plaintiff's Complaint, were conducted and captured through the party's use of the WhatsApp mobile application. (ECF No. 1 at ¶ 8; attached at ECF No. 1-1). Shortly after, CVCP sent back a written purchase order to REM for 1,075 Apple products totaling $825,000. (*Id.* at 3–4; ECF No. 1-1 at 53.) CVCP sent $412,500 via bank wire transfer to REM as a partial payment for this purchase. (ECF No. 1 at 4; ECF No. 1-1 at 59.) On December 9, 2019, Solomon messaged Van Nieuwenhuyzen confirming the wire transfer of $412,500 was successful. (ECF No. 1-1 at 6.) The remaining amount was to be sent via wire transfer upon delivery of the Apple products. (ECF No. 1 at 4.)

About two weeks later, CVCP received four products from this shipment: three laptops (each a different model) and one iPad. (*Id.*) The value of these products was $2,715.

(*Id.*) After this initial delivery, Van Nieuwenhuyzen contacted Solomon numerous times to inquire about the delivery date for the remaining products. Solomon continuously assured Van Nieuwenhuyzen the products were on their way, but there was no delivery. (ECF No. 1-1 at 8–48.) On December 28, 2019, Solomon messaged Van Nieuwenhuyzen confirming the truck with the remaining items was on its way to CVCP. (*Id.* at 11.) For the next month, the text messages follow a repetitive cycle, with Solomon promising the truck will arrive soon then providing various excuses when the truck does not arrive. (*Id.* at 11– 16.) After two weeks, Van Nieuwenhuyzen started requesting his money back and Solomon promised the return of the funds, but the wire refund had the same apparent delays as the product shipment. By March 2020, Van Nieuwenhuyzen became increasingly frustrated and Solomon sent him $10,000 as a partial refund.[1] (*Id.* at 26–27.) In April 2020, Van Nieuwenhuyzen's messages indicate he was still waiting on the shipment or a full refund but received neither. (*Id.* at 29.)

This entire ordeal apparently had significant business consequences for CVCP. Van Nieuwenhuyzen tells Solomon he is having trouble keeping employees on payroll and doesn't have the money to buy replacement products because of how much he sent Solomon through the initial wire transfer. (*Id.* at 30.) By July, Van Nieuwenhuyzen expresses severe frustration at being unable to reach Solomon for two weeks and still not seeing the product delivery or a refund. (*Id.* at 33.) On September 25, Van Nieuwenhuyzen sent the following messages to Solomon:

---

[1] It appears Plaintiff received a total refund of $15,000 (ECF No. 1 at 11) but parties did not reference the additional $5,000 refund in the WhatsApp communications.

Andrew, I've waited 10 months. I cant [sic] wait any longer. You dont [sic] answer calls or call back despite telling me you would the last time we talked. All I get is Mike telling me he is sending money tomorrow every day for months and it never happens, all lies from both of you. For all I know you've still got my money since you've never shown me a shred of proof about anything. I need a payment plan, I need it on paper, and I need it today. . . . I gave you my life savings to deliver parts on a PO that you never delivered. I feel bad if you lost out too but you and Mike were in control of the deal, not me. You and Mike somehow lost a truckload of macs. On a separate deal multiple truckloads in TX have somehow gone into thin air with no complaints from you or Mike…they were in customs for months, then it just needed a form, then they were being palletizing for delivery like a month ago and you guys act like they don't exist anymore and that's all OK. Mike gets some photoshopped check that's supposed to make me whole. . . . I have [pictures and documentation] for every single lot I buy, but all you and Mike's lots manage to disappear into thin air and no one ever shows proof that they ever existed . . . . I let two employees go while waiting[.]

(*Id.* at 40–41.)

The messaging chain continues in a similar fashion and in April 2021, Van Nieuwenhuyzen asks Solomon for another status update because,

[i]t's been 16 months Andrew, something needs to happen fast for me over here. In that time frame I've seen like 10 multimillion dollar deals of yours and his just somehow fall through and disappear. I would be a fool to think this one or the next one is going to be any different.

(*Id.* at 48.)

In September 2021, Van Nieuwenhuyzen told Solomon he plans to take legal action because he never received the delivery beyond the four Apple products in December 2019 and he only received $15,000 in refunded money. (*Id*; ECF No. 1 at 5.) Plaintiff CVCP instituted this lawsuit two months later. The complaint brings seven causes of action, including two claims for violation of the Racketeer Influenced and Corrupt Organizations

Act ("RICO Act"). The remaining claims, including breach of contract and fraud, are based in state law.

Andrew Solomon initially filed a pro se response on behalf of himself and REM. (ECF Nos. 6, 7.) After the magistrate judge advised Solomon he could not represent REM pro se, Mr. Solomon hired an attorney represent himself and REM. (*See* ECF Nos. 13, 14.) Ultimately, the Court allowed Defendants' counsel to file a belated amended answer but did not allow Defendants to file a motion to dismiss because the time to do so had passed. (*See* ECF Nos. 15, 16, 20, 22, 29.) Before the initial pretrial conference, Defendants filed the instant motion for summary judgment.[2] (ECF No. 32.) The parties have only recently begun initial discovery and the final discovery deadline is set for January 9, 2023. (ECF No. 37.)

Defendants base their motion on lack of subject matter and personal jurisdiction. (ECF No. 32.) Defendants argue there are not sufficient facts to show a pattern of racketeering activity required for a RICO claim. (ECF No. 33 at 8.) Defendant further assert without the RICO claim, the court does not have subject matter jurisdiction over the supplemental claims. (*Id.* at 11.) Defendant Solomon contends the Court does not have personal jurisdiction over him because he is a Georgia resident. (*Id.* at 9.) Plaintiff counters that it is too early in the case to make such determinations, but at a minimum, the pleadings and evidence available to the Court now are sufficient to defeat summary judgment. (ECF No. 35.)

---

[2] Unless otherwise provided in the local rules or Court Order, motions for summary judgment may be filed at any point in the proceedings until thirty days after the close of all discovery. Fed. R. Civ. Pr. 56(b); *see also Jones v. Allen*, No. 13-CV-2167, 2014 WL 4854736, at *1–2 (D. Colo. Sept. 30, 2014).

## Legal Standard

Summary judgment is appropriate where a movant shows "there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010) (emphasis added). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal quotations and citations omitted). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002).

In reviewing a motion for summary judgment, the Court is to determine whether there is evidence to support a party's factual claim, *Jarvis v. Potter*, 500 F.3d 1113, 1120 (10th Cir. 2007), and, in doing so, must view the evidence and draw reasonable inferences in a light most favorable to the nonmoving party, *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011). "However, unsupported conclusory allegations do not create a genuine issue of fact [,]" *id.* (internal quotations and citations omitted), and "mere speculation unsupported by evidence is insufficient to resist summary judgment [,]" *Martinez v. CO2 Serv., Inc.*, 12 F. App'x 689, 695 (10th Cir. 2001) (citations omitted).

This Court has recognized summary judgment is not a "disfavored procedural shortcut;" rather, "it is an important procedure 'designed to secure the just, speedy and inexpensive determination of every action.'" *Robert L. Kroenlein Tr. ex rel. Alden v.*

*Kirchhefer*, No. 11-CV-284-S, 2013 WL 1337385, at *1 (D. Wyo. Mar. 31, 2013), aff'd, 764 F.3d 1268 (10th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" *Id.* (quoting *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)).

### ANALYSIS

**1. Subject Matter Jurisdiction**

   **a. Diversity Jurisdiction**

In the complaint, Plaintiff stated this Court has both federal question and diversity jurisdiction over the action.[3] (ECF No. 1 at 2.) Federal district courts have original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. When analyzing diversity jurisdiction, courts look to where an individual is domiciled to determine their state citizenship. *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014). Corporations are a citizen in every state where the corporation has been incorporated and any state where the corporation has its principal place of business. § 1332(c)(1). An LLC takes the citizenship of all its members. *Siloam Springs Hotel, LLC v. Century Surety Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015).

---

[3] Inexplicably, Plaintiff concedes in the response brief that it did not allege diversity jurisdiction in the original complaint. (ECF No. 35 at 4.) The plain language of the complaint states "[j]urisdiction is based on diversity of citizenship and federal question." (ECF No. 1 at 2.) Plaintiff's Response fails to follow the format as required under this Court's Local Rule 7.1(b)(2)(D). It is anticipated that this oversight won't happen again.

Plaintiff CVCP is a corporation formed under California laws with a principal place of business in California. (ECF No. 1 at 2.) CVCP is a citizen of California for purposes of the diversity jurisdiction analysis. *See* § 1332(c). Defendant REM is a Wyoming LLC and its sole member is Defendant Solomon. (ECF No. 33-1 at 1.) Defendant Solomon is a resident of Georgia and so REM is also considered a citizen of Georgia for the purposes of diversity jurisdiction. (*Id.*); *Siloam Springs Hotel, LLC*, 781 F.3d at 1234. There is complete diversity of citizenship between the two parties. Plaintiff alleges the amount in controversy exceeds $394,000, well above the required $75,000 threshold. (ECF No. 1 at 2.) Thus, this Court has diversity jurisdiction over this action.

### b. Federal Question Jurisdiction

Federal courts are courts of limited jurisdiction, but maintain original jurisdiction over claims arising under federal law. 28 U.S.C. § 1331; *Lynn v. Brown*, 803 F. App'x 156, 159 (10th Cir. 2020). The party seeking to invoke federal question jurisdiction has the burden of showing such jurisdiction exists. *Lynn*, 803 F. App'x at 159. To meet this burden, the Court will assume all "plausible, non-conclusory, and non-speculative" factual allegations are true. *Id.* (internal citations omitted).

Plaintiff's complaint asserts subject matter jurisdiction exists under § 1331 because the action arises in part from claims under the RICO Act. (ECF No. 1 at 2.) Ordinarily, claims asserted under the RICO Act qualify for federal question jurisdiction. *Lynn*, 803 F. App'x at 160. Any person who suffered a business injury because of an alleged RICO violation may bring an action under this Act. 18 U.S.C. § 1964(c). To maintain a cause of action under § 1964(c), a plaintiff must plead and prove: (1) the defendant violated § 1962;

(2) the plaintiff's business or property was injured; and (3) defendant's violation caused this injury. *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 881 (10th Cir. 2017) (internal quotation marks and citations omitted); *see also* 18 U.S.C. § 1964(c).

Section § 1962(c) makes it unlawful for a person employed by or associated with an enterprise to conduct the enterprise's affairs through a pattern of racketeering activity. *Safe Streets All.*, 859 F.3d at 882. The plaintiff must plausibly allege: (1) Defendant conducted the affairs; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *Id.* (internal quotations and citations omitted). Defendants argue there is no enterprise here because an LLC with one sole owner cannot constitute an enterprise. (ECF No. 33 at 6–7.) For the purposes of this analysis, the Court will assume an enterprise exists. Nonetheless, even making this assumption, Plaintiff's RICO claim fails on the pattern element.

Defendants correctly note there is insufficient evidence to show a pattern of racketeering activity because the allegations only relate to a single transaction in December of 2019. (ECF No. 33 at 4, 8–9.) This single transaction—the agreement to purchase 1,075 Apple products for $825,000—does not amount to a pattern. (*Id.*) Undeterred, Plaintiff disagrees, pointing to REM's bank statements, which show over thirty wire transfers between REM and Michel Namroud's Canadian bank accounts for over $600,000. (ECF No. 35 at 7.) Plaintiff's counsel has attached her own declaration in which she declares "she conducted a name search for 'Michel Namroud' on Google and obtained a newspaper article from *The Hamilton Spectator* titled 'Accused in $3M Fraud Denied Bail'". (ECF No. 35-7 at 3). A copy of the article is also attached (ECF No. 35-3 at 2). This article purports to identify Michel Namroud as the individual denied bail. *Id.* From there

Plaintiff's counsel takes the leap[4] to assert "[t]his series of fraudulent wire transfers to a known felon's overseas bank accounts demonstrates a pattern of criminal enterprise[5] and the existence or threat of continued criminal activity with similar participants." (ECF No. 35 at 7.) In response to Plaintiff's argument, Defendants assert if Plaintiff needed more time to conduct discovery before addressing the *Motion for Summary Judgment*, Plaintiff should have submitted an affidavit as required by Fed. R. Civ. Pr. 56(d). (ECF No. 40 at 5.)

Defendants are correct on both issues. The Federal Rules of Civil Procedure allow a court to grant summary judgment at any time and if a nonmovant cannot provide "facts essential to its opposition," it must alert the Court by affidavit or declaration. Fed. R. Civ. Pr. 56(b); (d). Rule 56(d) allows a court to grant summary judgment before discovery is complete. *Williams v. Valencia County Sheriff's Office*, 33 F. App'x 929, 931 (10th Cir. 2002). A 56(d) affidavit must include: (1) the probable facts not currently available; (2) an

---

[4] This leap cannot be taken. Newspaper and magazine articles or other similar type media, shockingly in today's world, are still inadmissible hearsay, which is insufficient to oppose summary judgment. *See Welch v. City of Albuquerque*, 2016 WL 8809479 (D.N.M. May 13, 2016) (*citing with approval New England Mut. Life Ins. Co. v. Anderson*, 888 F.2d 646, 650-51 (10ᵗʰ Cir. 1989)); *see also Robinson v. Keita*, 20 F.Supp.3d 1140, 1151 n. 11 (D.Colo. 2014) (newspaper articles are classic inadmissible hearsay and not competent evidence to oppose summary judgment).

[5] Plaintiff made a serious allegation against Defendant Solomon in its response brief—that Solomon concealed his true identity from the Court and has actually been convicted in North Dakota of money laundering and conspiracy to defraud the United States. (ECF No. 35 at 5.) Plaintiff's counsel based this allegation on a criminal docket search for the name "Neville Andrew Solomon" and contends "it is clear that the criminal defendant Neville Solomon is the same person as Defendant Solomon in this case because both of them purport to be from Georgia." (*Id.*) Defendants' reply brief included a criminal history report for Defendant Neville Andrew Solomon, using Defendant's date of birth and social security number. (ECF No. 40-1.) This report showed no criminal history aside from one traffic offense. (*Id.* at 1–2.) The Court declines to consider this North Dakota criminal case or any alleged criminal history at this time. Likewise, the Court declines to address whether Michel Namroud is a "known felon" based solely on an inadmissible newspaper article denying someone bail. (ECF No. 35 at 4.) Unless counsel wish to incur the wrath of this Court, they will discontinue the name calling and similar bombastic comments in their communications and filings. They would do well to heed the advice set forth in Judge Rankin's order denying Plaintiff's Motion to Compel Disclosure and for Discovery Sanctions. (ECF No. 41 at 3.)

explanation as to why the facts cannot be obtained at this time; (3) what steps the parties have taken to obtain these facts; and (4) how additional time will allow the nonmovant to obtain those facts and rebut the motion for summary judgment. *Price ex rel. Price v. Western Resources, Inc.*, 232 F.3d 779, 783 (10th Cir. 2000). When a party fails to submit a 56(d) affidavit, "there is no abuse of discretion in granting summary judgment if it is otherwise appropriate." *Id.* at 784. Other courts in the Tenth Circuit have explicitly stated a response brief to summary judgment is no substitute for a Rule 56(d) affidavit. *Estate of Anderson v. Denny's Inc.*, 987 F.Supp.2d 1113, 1131–32 (D.N.M. 2013). On appeal, the Tenth Circuit has not been sympathetic to a party's failure to file the required affidavit. *Douglass v. United Auto Workers Local Union 31*, 188 F. App'x 656, 659 (10th Cir. 2006). Plaintiff did not provide a 56(d) affidavit but relies on the complaint, response brief, and related exhibits (some inadmissible) to carry its argument. Plaintiff claims it would be premature to grant summary judgment because parties have not conducted discovery. (ECF No. 35 at 6.) Plaintiff's response brief mirrors a "drive-by" request for more time to conduct discovery and the Tenth Circuit has also been critical of such requests. *See Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020).

Plaintiff has not complied with the requirements under the Federal Rules of Civil Procedure, but beyond that, Plaintiff fails to prove the pattern element required under RICO. A "'pattern of racketeering activity' requires at least two acts of racketeering activity" within ten years. *Hall v. Witteman*, 584 F.3d 859, 867 (10th Cir. 2009) (quoting 18 U.S.C. § 1961(5)). To satisfy this element, a plaintiff needs to allege "not only that the defendants had committed two or more predicate acts, but also that the predicates

11

themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *Id.* (emphasis in original). As did the district and appellate court in *Hall,* this Court finds Plaintiff has, at best, alleged "a closed-ended series of predicate acts constituting a single scheme to accomplish a discrete goal [of defrauding CVCP out of over $400,000] directed at only [Plaintiff] with no potential to extend to other persons or entities." *Id.* at 867-68.

Plaintiff provided REM's bank records which do show several large transfers between REM and the Canadian Bank of Nova Scotia. (*See* ECF No. 35-2.) There are also substantial transfers between REM and Michel Namroud.[6] (*See id.*) These transfers are for very large individual amounts, including a transfer of over $75,000 between REM and Michel Namroud and a transfer between REM and The Bank of Nova Scotia for $200,000, both on December 10, 2019. Ultimately, however, large bank transfers by themselves do not indicate illegal activity and Plaintiff's counsel's conclusory and speculative allegation that RICO defendants may potentially target others beyond the plaintiff is not enough to establish a pattern under RICO. *Sensoria, LLC v. Kaweske*, No. 20-CV-942, 2022 WL 204606, at *20 (D. Colo. Jan. 24, 2022)

These unrelated bank transfers, taken in the light most favorable to the Plaintiff, are insufficient to show Solomon, REM, and Michel Namroud are involved in a pattern of activity to defraud other companies such as CVCP. *See Torwest DBC, Inc. v. Dick*, 810 F.2d 925, 929 (10th Cir. 1987) (holding that a single scheme with one victim was not

---

[6] This might be the same "Mike" referenced numerous times in the WhatsApp communications between Solomon and Van Nieuwenhuyzen and involved in the deal between REM and CVCP, but that is not shown. (*See e.g.* 1-1 at 14, 15, 40.)

sufficient to satisfy the pattern element of a RICO claim); *see also McBee v. IHSS, Inc.*,

655 F.Supp. 448, 449 (D. Colo. 1987) (holding a single fraudulent scheme, with no threat

of continuing activity, did not satisfy the pattern element). Plaintiff pontificates this "series

of fraudulent wire transfers to a purported felon's[7] overseas bank accounts demonstrates a

pattern of a criminal enterprise and the existence or threat of continued criminal activity

with similar participants." (ECF No. 35 at 7.) This is rank speculation. Plaintiff has no

evidence to prove this pattern aside from showing there were large bank transfers—an

occurrence common with business accounts.

Plaintiff asks the Court to find there was a pattern based on (1) the erroneous

assumption that Solomon is a convicted felon and (2) a mere showing of bank transfers

between Solomon and another alleged felon, Michel Namroud. Importantly, Plaintiff only

claims Namroud is a felon based on an inadmissible newspaper article (ECF No. 35-3 at

2) that would not be admissible at trial and cannot be consider here. *Gross v. Burggraf*

*Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995); *Robinson v. Keita*, 20 F.Supp.3d 1140,

1151 n. 11 (D. Colo. 2014). Without more, the evidence presented shows one incident

where CVCP, the only victim, was allegedly defrauded out of $412,500. This does not

show a pattern of predicate acts or indicate there is a threat of continuing racketeering

activity. This is a singular incident with a singular victim. *Sensoria, LLC v. Kaweske*, No.

20-CV-942, 2022 WL 204606, at *19 (D. Colo. Jan. 24, 2022) (reiterating that RICO does

---

[7] Assuming that the Michel Namroud is the same individual as referenced in the inadmissible newspaper article, there is a difference between being charged with a felony and being convicted. In any event, Court records would be the acceptable method to establish this point. This Court can take judicial notice of its own and another court's publicly filed records, but no such records has been submitted. *Applied Predictive Technologies, Inc. v. MarketDial, Inc.*, 2019 WL 3554016 (D.Utah August 5, 2019).

not cover fraudulent acts that accomplish one discrete goal). "RICO requires that at least two predicate acts take place within ten years of each other." *Advanced Optics Electronics, Inc. v. Robins*, 633 F.Supp.2d 1237, 1255 (D.N.M. 2008) (citing 18 U.S.C. § 1962(1); *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237 (1989)). The evidence presented only demonstrates one predicate act—the allegedly fraudulent computer parts sale that took place in December 2019.

Moreover, CVCP and REM apparently had a working business relationship for four years without any issues (ECF No. 1 at 3) which further weakens any argument that this alleged fraud was not an isolated incident. *Sensoria, LLC*, No. 20-CV-942, 2022, at *21 ("[t]he occurrence of multiple predicate acts over a period of several years is needed to plead continuity"). If a plaintiff only alleges a single scheme to accomplish a discrete goal against one victim, there are insufficient allegations to sustain a RICO action. *Id.*

To the extent Plaintiff requests more time to conduct discovery on the alleged scheme, Plaintiff did not file a Rule 56(d) affidavit. As discussed, Plaintiff's request for more time in its response brief is not the equivalent of filing the requisite affidavit. *Estate of Anderson v. Denny's Inc.*, 987 F.Supp.2d 1113, 1131–32 (D.N.M. 2013). Plaintiff's failure to comply with procedural requirements and inability to provide sufficient admissible evidence to show a pattern of racketeering activity are fatal to the RICO claim.

Considering the evidence presented to the Court through the initial filings in this case, no genuine issues of material fact exist and as a matter of law Defendants are entitled to summary judgment on Plaintiff's RICO claims. Even viewing the evidence in the light most favorable to Plaintiff, there are no facts showing a pattern of racketeering activity or

a threat of continued racketeering. *Hall*, 584 F.3d at 867. Summary judgment on the RICO

Act claim (Count 4) and the wire fraud claim[8] (Count 3) in Defendants' favor is

appropriate. Without any remaining claims arising under federal law, the Court does not

have federal question jurisdiction over this action

## 2. Personal Jurisdiction

As a preliminary matter, Plaintiff's counsel asserts Defendants cannot make any

objection to personal jurisdiction because they waived this objection "when they personally

appeared in the case and filed answers." (ECF No. 35 at 9.) This is not the law. *United*

*States v. Foster*, 4 F. App'x 605, 606 n. 2 (10th Cir. 2001) ("[a]ny objection a party may

have to the court's exercise of personal jurisdiction over it must be asserted in the answer

or in the pre-answer motion"). A party can preserve any objection to personal jurisdiction

by making such an objection in a motion or by including it in a responsive pleading[9] or

amendment allowed as a matter of course. Fed. R. Civ. Pr. 12(h)(1). A party preserves any

defense based on lack of personal jurisdiction by denying the complaint's allegation of

jurisdiction in an answer. *Fabara v. GoFit, LLC*, 308 F.R.D. 380, 399 (D.N.M. 2015);

*Hedges v. Trailer Express, Inc.*, No. CIV-14-1145, 2015 WL 402857, at \*6–7 (W.D. Okla.

Jan. 29, 2015). Both Defendants were given leave to submit amended answers. (ECF Nos.

16, 29.) In these amended answers, both Defendants raised objections on the issue of

---

[8] Plaintiff's complaint alleges a claim for wire fraud but does not cite the basis for this claim. The complaint alleges
a second, separate claim for violation of RICO. Because Wyoming does not have a wire fraud statute and the wire
fraud claim uses similar language to the RICO claim, the Court assumes the wire fraud claim is also brought under
RICO.
[9] Defendant Solomon's initial pro se Answer (ECF No. 6 at 2) asserted various unexplained "form" defenses,
including "2. The court does not have personal jurisdiction over the defendant because (*briefly explain*)". *Id.* at 2.

personal jurisdiction and denied the allegations in the complaint asserting this Court had personal jurisdiction over Defendants. (ECF No. 21 at 2, 11; ECF No. 30 at 2, 11.) This properly preserved any objection to personal jurisdiction under Fed. R. Civ. Pr. 12(h)(1).

### a. Defendant REM

This analysis is straightforward. A court has general jurisdiction over a corporation when the corporation is incorporated in that state or has its principal place of business in that state. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). This premise extends to limited liability companies. *Allen v. IM Solutions, LLC*, 83 F.Supp.3d 1196, 1204 (E.D. Okla. 2015). Defendant REM is an LLC formed under the laws of Wyoming. (ECF No. 35-4 at 2–4.) This Court therefore has general personal jurisdiction over Defendant REM.

### b. Defendant Andrew Solomon

The analysis for Defendant Solomon is slightly more involved. Plaintiff has the burden of establishing personal jurisdiction over Defendant Solomon. *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, at *5 (10th Cir. 2022). Because the Court did not hold a hearing on this issue, Plaintiff only must make prima facie showing of personal jurisdiction and the Court will construe all pleadings in Plaintiff's favor when considering personal jurisdiction at this stage.[10] *Niemi v. Lasshofer*, 770 F.3d 1331, 1347–48 (10th Cir. 2014). A court may exercise specific personal jurisdiction over a nonresident defendant in a diversity action if such jurisdiction comports with the forum state's laws and the Fourteenth Amendment Due

---

[10] Although this rule is typically invoked only for a motion to dismiss, the Court finds that the summary judgment motion in this case is substantively similar to a motion to dismiss because the motion only raises arguments based on lack of personal and subject matter jurisdiction. *Bridgewater v. Hilton Hotels Corp.*, No. 20-11888, 2021 WL 3032511, at *6 (E.D. Mich. Jul. 19, 2021) (construing a motion for summary judgment as a motion to dismiss based on the substance of the motion).

Process. *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) ("To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.")

Wyoming's long-arm statute authorizes its courts to "exercise jurisdiction on any basis not inconsistent with the Wyoming or United States Constitution." Wyo. Stat. Ann. § 5-1-107(a). The United States Constitution's Fourteenth Amendment Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *OMI Holdings, Inc. v Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090 (10th Cir. 1998) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (internal quotation marks omitted)). Therefore, to exercise jurisdiction consistent with the Due Process Clause, defendants must have "minimum contacts" with the forum state, such that defending a lawsuit would not "offend traditional notions of fair play and substantial justice." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting *Int'l Shoe Co., v. Wash.*, 326 U.S. 310, 316 (1945)).

The plaintiff may meet the minimum contacts standard in one of two ways. *OMI*, 149 F.3d at 1091. First, a court may "assert specific jurisdiction over a nonresident defendant 'if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* (quoting *Burger King*, 471 U.S. at 472). However, where a court cannot

17

exercise jurisdiction because the defendant did not engage in activities directed at the forum, "the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state." *OMI*, 149 F.3d at 1091 (citing *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 415 (1984)).

Wyoming has adopted the Supreme Court's distinction between specific and general jurisdiction. "In contrast (to specific jurisdiction), 'general' jurisdiction is when a state exercises jurisdiction over the defendant in a suit not arising out of or related to that defendant's contacts with the state." *Amoco Prod. Co. v. EM Nominee P'ship Co.*, 886 P.2d 265, 268 (Wyo. 1994) (internal citations omitted). "[E]ven if a single act arises out of or is related to the suit, a state may not have jurisdiction if the nature of the act creates only an 'attenuated' connection with the forum." *Id.* (internal citations omitted). Instead, "[a] court may exercise 'general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 517 U.S 117, 127 (2014). "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004).

A court will have general jurisdiction over an individual if their domicile is in the forum state. *Daimler AG*, 571 U.S. at 137. Defendant Solomon is an individual who resides

in Georgia. (ECF No. 33-1 at 1.) However, this is not fatal to the general jurisdiction analysis if Solomon has "continuous and systematic" contacts which would render him essentially at home in Wyoming. *See Helicopteros Nacionales*, 466 U.S. at 415–16. As Plaintiff noted, Solomon formed his wholly-owned LLC in Wyoming. Solomon voluntarily availed himself to the laws of Wyoming when he incorporated his entity in this state. (*See* ECF No. 35-4.) Moreover, on the Articles of Organization, Solomon represented that at the time of the creation of the LLC he resided in Wyoming. (*Id.* at 3.) Section IX in the Articles of Organization requires "the names and addresses of the manager or managers[.]" (*Id.*) The sole individual named in this section is Andrew Solomon and his listed address is 2710 Thomes Avenue, Cheyenne, WY 82001. Solomon represented that he had systematic and continuous contacts with Wyoming by listing a Wyoming address as his own address on the Articles of Organization. *See gen. Network Enterprises, Inc. v. APBA Offshore Productions, Inc.*, 427 F.Supp.2d 463, 478–79 (S.D.N.Y. 2006) (finding personal jurisdiction over the individual incorporator of a corporation who listed his personal address on the Articles of Incorporation).

The Court acknowledges that in Wyoming, the liabilities of an LLC are solely those of the entity and do not become the liabilities of any members except for limited circumstances. Wyo. Stat. Ann. § 17-29-304(a). However, for the "purposes of a motion to dismiss, a court may assume that an individual defendant was a business entity's alter ego so that an entity's act of consenting to jurisdiction is deemed to be the individual's act of consenting to jurisdiction." *Dixie Aire Title Services, Inc. v. SPW, LLC*, No. CIV-07-0141, 2008 WL 570960, at *2 (W.D. Okla. Feb. 28, 2008). "This approach allows the court to

reserve the merits of the alter ego claims and a final determination regarding personal jurisdiction until a later stage where the evidentiary record is more developed." *Id.*

In *Segil*, the District of Utah found a sole shareholder subject to general jurisdiction in the forum state, although she was not a resident of the forum state. *Segil v. Gloria Marshall Management Co., Inc.*, 568 F.Supp. 915, 919 (D. Utah 1983). There, the court found it relevant that the defendant was the sole shareholder, officer, and director of the corporation. *Id.* She had complete control over the corporation and the interests of the corporation mirrored her own personal interests. *Id.* The activities of the corporation were her activities. *Id.* Considering this evidence, the court found the shareholder defendant was subject to general jurisdiction in Utah.

Wyoming law allows a court to pierce the veil of an LLC only in extraordinary circumstances. *GreenHunter Energy, Inc. v. Western Ecosystems Technology, Inc.*, 337 P.3d 454, 462 (Wyo. 2014). Those circumstances include when the LLC's required separateness has ceased to exist due to misuse of the LLC and whether adherence to that fiction of a separate existence would lead to "injustice, fundamental unfairness, or inequity." *Id.* To come to this conclusion, the court may consider whether there was (1) fraud; (2) inadequate capitalization; (3) failure to observe required corporate formalities; or (4) intermingling of assets or finances of the company and the members. § 17-29-304(c).

At this time, it would be premature for the Court to determine on the merits whether Solomon is merely the alter ego of REM. Neither party has presented any evidence to the Court on these factors. However, by listing his address as a Wyoming address on the Articles of Organization, Solomon has blurred the line between the business operations of

REM and his own operations as an individual. (*See* ECF No. 35-4 at 3.) Furthermore, Solomon appears to have tried to reconcile with Van Nieuwenhuyzen by offering him proceeds from potential real estate sales. (ECF No. 1-1 at 49.) Despite the fact that REM does not deal in real estate, Solomon's real estate proceeds would have been used to satisfy a debt incurred by REM. Throughout the WhatsApp messages, there does not appear to be any meaningful separateness between Solomon's affairs and REM's affairs—what affected REM and its business dealings also affected Solomon individually. For example, when Van Nieuwenhuyzen continued to prompt Solomon for updates about the shipment, Solomon responded that he was embarrassed by the entire ordeal and he was "barely scraping by." (ECF No. 1-1 at 33.)

In the limited evidence presented to the Court, and viewed in the light most favorable to Plaintiff, Solomon did not appear to keep a separateness between his individual affairs and the business affairs of REM. What affected REM also affected Solomon personally. In the formation of REM Solomon represented that he had an individual address in the state of Wyoming. At this stage and given the burden upon Plaintiff it is sufficient to consider Solomon has consented to jurisdiction by acting as an alter ego of REM. *See Dixie Aire*, No. CIV-07-141, 2008 WL, at *2; *see also Segil*, 568 F.Supp. at 919. The Court finds it has general personal jurisdiction over Solomon in this diversity action for conduct and acts associated with REM and its business activities. This finding is only relevant to personal jurisdiction based on the preliminary evidence presented at this early stage in the proceedings.

### 3. Venue

Although Defendants did not raise this issue in the *Motion for Summary Judgment*, the Court is concerned there is no venue in this action. Defendants did properly raise venue as an affirmative defense in both amended answers. (ECF No. 21 at 11; ECF No. 30 at 11.) "[A] district court may raise on its own motion an issue of defective venue or lack of personal jurisdiction; but the court may not dismiss without first giving the parties an opportunity to present their views on the issue." *Stjernholm v. Peterson*, 83 F.3d 347, 349 (10th Cir. 1996) (quoting *Lipofsky v. New York State Workers Comp. Bd.*, 861 F.2d 1257, 1259 (11th Cir. 1988)). When a plaintiff has chosen an improper venue, a court may cure this defect when it is in the interests of justice by transferring the suit to the proper venue. *Tillotson v. City of El Paso*, No. 09-0963, 2010 WL 597993, at *3 (D.N.M. Jan. 29, 2010) (citing *Trujillo v. Williams*, 465 F.3d 1210, 1222 (10th Cir. 2006)).

At this point, outside the business formation of REM in Wyoming, the Court does not see any connection to the State of Wyoming. None of the events giving rise to this action occurred in Wyoming. None of the witnesses or parties reside in Wyoming, except for the conflicting evidence over Solomon's address—it is unclear whether he is a resident of Georgia (ECF No. 33-1 at 1) or whether he has or maintains some address and residence in Wyoming (ECF No. 35-4 at 3). Based on the filings submitted, it appears venue would be more appropriate in California or Georgia. *See* 28 U.S.C. § 1391(b). Accordingly, the Court directs the parties to submit supplemental briefing **to be filed no later than June 10, 2022,** on the issue of whether venue is appropriate in Wyoming.

CONCLUSION

The Court finds, because the RICO claims fail to allege or establish the pattern element and the Plaintiff did not submit the required 56(d) affidavit, Defendant is entitled to summary judgment on Counts 3 and 4 of Plaintiff's Complaint. In the absence of these RICO claims, the Court lacks federal question jurisdiction. However, based on the evidence submitted by both parties, the Court does have diversity jurisdiction over the remaining claims. Similarly, based on the evidence presented at this early stage in the proceedings, the Court finds Plaintiff has made a prima facie showing that it has personal jurisdiction over both Defendants. It is

**ORDERED** that Defendants' *Motion for Summary Judgment* (ECF No. 32) is GRANTED as to the civil RICO Act claim (Count 4) and the wire fraud claim (Count 3). It is

**FURTHER ORDERED** that Defendants' *Motion for Summary Judgment* (ECF No. 32) is DENIED on all other grounds. It is

**FURTHER ORDERED** that the parties shall submit supplemental briefing on the issue of venue on or before June 10, 2022. It is finally

**ORDERED** that Plaintiff counsel's spontaneous Motion for Sanctions (ECF No. 35 at 9) based upon a frivolous motion is self-evidently DENIED.

Dated this 24ᵗʰ day of May, 2022.

Scott W. Skavdahl
United States District Judge